### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

| | |
|---|---|
| T.J. ROBERTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*,<br><br>*Defendants*. | No. 2:26-cv-91-SCM |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.      ASAF should be dismissed for claim splitting. ................................................ 1

    II.     Plaintiffs assert facial challenges to the relevant NFA requirements and prohibitions, not as-applied challenges. ........................................................ 2

    III.    The Constitution empowers Congress to adopt the challenged NFA requirements. ................................................................................................ 6

          A.    The challenged NFA regulations remain a valid exercise of Congress's taxing power. ............................................................ 6

          B.    Congress's power under the Commerce Clause independently authorizes the challenged NFA regulations. ................................... 12

               1.    The NFA is not solely an exercise of Congress's taxing power. ........................................................................ 12

               2.    The NFA regulates persons and things in interstate commerce. ................................................................... 17

               3.    The NFA regulates intrastate activities that substantially affect interstate commerce. ...................................... 20

          C.    The Necessary and Proper Clause further supports the challenged NFA regulations. ............................................................................ 22

    IV.    The challenged NFA requirements comport with the Second Amendment. ............. 24

    V.     Any relief should be no more burdensome than necessary. .......................................... 32

CONCLUSION ................................................................................................................... 35

# TABLE OF AUTHORITIES

## **Cases**

*Am. Trucking Ass'ns v. Smith*,
496 U.S. 167 (1990) ...................................................................................................25

*Andrews v. State*,
50 Tenn. 165 (1871) ............................................................................................28, 29

*Bianchi v. Brown*,
111 F.4th 438 (4th Cir. 2024)...................................................................................30

*Bondi v. VanDerStok*,
604 U.S. 458 (2025) .....................................................................................................4

*Calleja Sebastian v. Olson*,
2025 WL 3688913 (E.D. Ky. Dec. 19, 2025) .........................................................33

*Carter v. Rivershell Apartments, LLC*,
2024 WL 4491750 (6th Cir. May 17, 2024)...............................................................9

*Child Labor Tax Case*,
259 U.S. 20 (1922) .......................................................................................................8

*Cir. City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ...................................................................................................17

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ...................................................................................................33

*Disc. Tobacco City & Lottery, Inc. v. United States*,
674 F.3d 509 (6th Cir. 2012)......................................................................................4

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .........................................................................................24, 28, 29

*EEOC v. Frank's Nursery & Crafts, Inc.*,
177 F.3d 448 (6th Cir. 1999).....................................................................................2

*Felsenheld v. United States*,
186 U.S. 126 (1902) .....................................................................................................7

*Fife v. State*,
31 Ark. 455 (1876)......................................................................................................29

i

*Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,*
    527 U.S. 627 (1999) ...................................................................................................13

*Franks v. Ky. Sch. for the Deaf,*
    142 F.3d 360 (6th Cir. 1998) ......................................................................................12

*Friedman v. City of Highland Park,*
    136 S. Ct. 447 (2015) .................................................................................................30

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.,*
    146 S. Ct. 1546 (2026) ......................................................................................... 12, 13

*Garcia v. Vanguard Car Rental USA, Inc.,*
    540 F.3d 1242 (11th Cir. 2008) .................................................................................22

*Gonzales v. Raich,*
    545 U.S. 1 (2005) ..............................................................................................*passim*

*Hamilton v. Ky. Distilleries & Warehouse Co.,*
    251 U.S. 146 (1919) ...................................................................................................10

*Haynes v. United States,*
    390 U.S. 85 (1968) .....................................................................................................14

*Heart of Atlanta Motel, Inc. v. United States,*
    379 U.S. 241 (1964) ...................................................................................................21

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,*
    740 F. Supp. 3d 509 (N.D. Tex. 2024) .........................................................................7

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
    452 U.S. 264 (1981) .............................................................................................. 11, 21

*Hohn v. United States,*
    524 U.S. 236, (1998) ..................................................................................................25

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ...................................................................................................34

*James B. Oswald Co. v. Neate,*
    98 F.4th 666 (6th Cir. 2024) ......................................................................................35

*James Everard's Breweries v. Day,*
    265 U.S. 545 (1924) .....................................................................................................7

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017) .................................................................................33

ii

*John Doe No. 1 v. Reed,*
   561 U.S. 186 (2010) .................................................................................................... 2, 3, 5

*Johnson v. United States,*
   576 U.S. 591 (2015) ................................................................................................................30

*Landor v. La. Dep't of Corrs. & Pub. Safety,*
   146 S. Ct. 1931 (2026) ...................................................................................................... 23, 24

*Lane v. Pulaski Cty.,*
   2014 WL 996293 (E.D. Ky. Mar. 13, 2014) .............................................................................9

*Legal Tender Cases,*
   79 U.S. (12 Wall) 457 (1870) ................................................................................................14

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................................................9

*Maxwell v. FCA US, LLC,*
   2023 WL 246836 (6th Cir. Jan. 18, 2023) ...............................................................................9

*McCulloch v. Maryland,*
   17 U.S. 316 (1819) .................................................................................................................11

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,*
   945 F.2d 150 (6th Cir. 1991) .................................................................................................33

*Minnesota ex rel. Whipple v. Martinson,*
   256 U.S. 41 (1921) ...................................................................................................................7

*Mock v. Garland,*
   75 F.4th 563 (5th Cir. 2023) ............................................................................................ 26, 30

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ........................................................................................................... 4, 19

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
   597 U.S. 1 (2022) ...................................................................................................................27

*NFIB v. Sebelius,*
   567 U.S. 519 (2012) ....................................................................................................12, 18, 19

*Nigro v. United States,*
   276 U.S. 332 (1928) ......................................................................................................7, 8, 23, 24

*Oklahoma v. United States,*
   163 F.4th 294 (6th Cir. 2025) ..................................................................................................4

iii

*Perez v. United States,*
402 U.S. 146 (1971) ..........................................................................................................21

*Ream v. U.S. Dep't of Treasury,*
174 F.4th 480 (6th Cir. 2026).................................................................................. 6, 11, 23

*Sabri v. United States,*
541 U.S. 600 (2004) ..........................................................................................................19

*Second Amend. Found., Inc v. ATF,*
702 F. Supp. 3d 513 (N.D. Tex. 2023) ......................................................................... 25, 33

*Snope v. Brown,*
145 S. Ct. 1534 (2025).......................................................................................................30

*Sonzinsky v. United States,*
300 U.S. 506 (1937) ....................................................................................................*passim*

*State v. Kerner,*
107 S.E. 222 (N.C. 1921)...................................................................................................29

*Teixeira v. Cty. of Alameda,*
873 F.3d 670 (9th Cir. 2017) .............................................................................................32

*Tex. Top Cop Shop, Inc. v. Garland,*
2024 WL 5203138 (5th Cir. Dec. 23, 2024).......................................................................19

*Thomas More L. Ctr. v. Obama,*
651 F.3d 529 (6th Cir. 2011) .............................................................................................19

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) ..........................................................................................................34

*Union Home Mortg. Corp. v. Cromer,*
31 F.4th 356 (6th Cir. 2022)..............................................................................................35

*United States v. Ardoin,*
19 F.3d 177 (5th Cir. 1994) ...............................................................................................15

*United States v. Barbeau,*
2016 WL 1046093 (W.D. Wash. Mar. 16, 2016)..................................................................26

*United States v. Beaty,*
2023 WL 9853255 (M.D. Fla. Jan. 20, 2023).........................................................26, 31, 32

*United States v. Bird,*
124 F.3d 667 (5th Cir. 1997)...........................................................................................13

*United States v. Bridges,*
   150 F.4th 517 (6th Cir. 2025)..............................................................................24, 29, 30

*United States v. Brooks,*
   2025 WL 2939404 (6th Cir. Oct. 16, 2025) ........................................................24, 26, 30

*United States v. Butler,*
   297 U.S. 1 (1936) ...................................................................................................16

*United States v. Chan,*
   2024 WL 4028019 (D. Haw. Sept. 3, 2024)............................................................25

*United States v. Comstock,*
   560 U.S. 126 (2010) ............................................................................................ 6, 7

*United States v. Conner,*
   2025 WL 2858030 (W.D. Tex. Sept. 19, 2025) ...................................................25, 31

*United States v. Cox,*
   235 F. Supp. 3d 1221 (D. Kan. 2017)......................................................................26

*United States v. Cox,*
   906 F.3d 1170 (10th Cir. 2018)...........................................................................25, 26

*United States v. Danielson,*
   2023 WL 5288049 (D. Minn. Aug. 17, 2023) ..........................................................25

*United States v. Darby,*
   312 U.S. 100 (1941)................................................................................................21

*United States v. DeBorba,*
   177 F.4th 1005 (9th Cir. 2026) ...............................................................................26

*United States v. Decker,*
   292 F.2d 89 (6th Cir. 1961) ....................................................................................14

*United States v. Doremus,*
   249 U.S. 86 (1919) .......................................................................................... 7, 23, 24

*United States v. Hale,*
   978 F.2d 1016 (8th Cir. 1992)..................................................................................15

*United States v. Hernandez,*
   159 F.4th 425 (5th Cir. 2025)...................................................................................24

*United States v. Holder,*
   2024 WL 1012914 (N.D. Ga. Mar. 9, 2024)..............................................................25

*United States v. Holder,*
    2024 WL 1599916 n.7 (N.D. Ga. Jan. 19, 2024)................................................................ 31, 32

*United States v. Houston,*
    103 F. App'x 346 (10th Cir. 2004) ....................................................................................15

*United States v. Jernigan,*
    750 F. Supp. 3d 579 (E.D. Va. 2024) ................................................................................25

*United States v. Jones,*
    976 F.2d 176 (4th Cir. 1992) ............................................................................................15

*United States v. Kahriger,*
    345 U.S. 22 (1953) ............................................................................................................11

*United States v. Lightner,*
    2024 WL 2882237 (M.D. Fla. June 7, 2024)................................................................. 31, 32

*United States v. Lopez,*
    514 U.S. 549 (1995) ..................................................................................................*passim*

*United States v. Miller,*
    307 U.S. 174 (1939) ..................................................................................................... 24, 29

*United States v. Miller,*
    2023 WL 6300581 (N.D. Tex. Sept. 27, 2023)..................................................................25

*United States v. Mills,*
    378 F. Supp. 3d 563 (E.D. Mich. 2019) ............................................................................19

*United States v. Morgan,*
    150 F.4th 1339 (10th Cir. 2025) ........................................................................................25

*United States v. Morrison,*
    529 U.S. 598 (2000) ..................................................................................................... 14, 22

*United States v. Myers,*
    2024 WL 2924081 (D. Nev. June 10, 2024) ......................................................................25

*United States v. Pearson,*
    8 F.3d 631 (8th Cir. 1993) ................................................................................................15

*United States v. Peterson,*
    161 F.4th 331 (5th Cir. 2025)............................................................................................26

*United States v. Pritchard,*
    392 F. App'x 433 (6th Cir. 2010) .....................................................................................15

*United States v. Pugh*,
   90 F.4th 1318 (11th Cir. 2024) .................................................................................................19

*United States v. Rahimi*,
   602 U.S. 680 (2024) .........................................................................................................*passim*

*United States v. Robinson*,
   2023 WL 12066735 (M.D. Fla. Feb. 9, 2023)...................................................................... 25, 26

*United States v. Robinson*,
   2025 WL 870981 (11th Cir. Mar. 20, 2025).............................................................................25

*United States v. Royce*,
   2023 WL 2163677 (D.N.D. Feb. 22, 2023) ..............................................................................25

*United States v. Rush*,
   130 F.4th 633 (7th Cir. 2025).........................................................................................*passim*

*United States v. Rush*,
   2023 WL 403774 (S.D. Ill. Jan. 25, 2023) ...............................................................................26

*United States v. Saleem*,
   2024 WL 5084523 (4th Cir. Dec. 12, 2024).............................................................................25

*United States v. Salerno*,
   481 U.S. 739 (1987) .................................................................................................................19

*United States v. Sawyer*,
   2018 WL 572094 (D. Kan. Jan. 26, 2018)................................................................................26

*United States v. Serna*,
   309 F.3d 859 (5th Cir. 2002)...................................................................................................30

*United States v. Serrano*,
   651 F. Supp. 3d 1192 (S.D. Cal. 2023) ............................................................................. 31, 32

*United States v. Shepherd*,
   2024 WL 71724 (S.D. Miss. Jan. 5, 2024) ...............................................................................25

*United States v. Sinclair*,
   2026 WL 1169894 (S.D. Fla. Apr. 30, 2026) ...........................................................................25

*United States v. Speed*,
   175 F.4th 272 (4th Cir. 2026)..................................................................................................26

*United States v. Springer*,
   609 F.3d 885 (6th Cir. 2010)...................................................................................................14

*United States v. Stepp-Zafft,*
    733 F. App'x 327 (8th Cir. 2018) ...................................................................................... 24, 26

*United States v. Thompson,*
    361 F.3d 918 (6th Cir. 2004) ................................................................................................14

*United States v. Thompson/Ctr. Arms Co.,*
    504 U.S. 505 (1992) ....................................................................................................... 29, 30

*United States v. Veasley,*
    98 F.4th 906 (8th Cir. 2024) ..................................................................................................5

*United States v. Villalobos,*
    2023 WL 3044770 (D. Idaho Apr. 21, 2023) ................................................................. 31, 32

*United States v. Vishnevski,*
    2026 WL 1078194 (S.D. Ill. Apr. 21, 2026) .........................................................................25

*United States v. Wilson,*
    440 F.2d 1068 (6th Cir. 1971) ..............................................................................................15

*United States v. Wood,*
    2016 WL 8131240 (E.D. Ky. Oct. 3, 2016) ..................................................................... 8, 15

*Watterson v. ATF,*
    2024 WL 897595 (E.D. Tex. Mar. 1, 2024) ..........................................................................25

*Wolford v. Lopez,*
    2026 WL 1825723 (U.S. June 25, 2026) ...............................................................................25

*Woods v. Cloyd W. Miller Co.,*
    333 U.S. 138 (1948) ..............................................................................................................12

*Zillow, Inc. v. Miller,*
    126 F.4th 445 (6th Cir. 2025) .................................................................................................3

## Statutes

18 U.S.C. § 922 .............................................................................................................................5

26 U.S.C. § 5802 ..........................................................................................................................16

26 U.S.C. § 5812 ...........................................................................................................9, 16, 26, 27

26 U.S.C. § 5822 ..................................................................................................................... 26, 27

26 U.S.C. § 5841 ...........................................................................................................1, 9, 16, 27

26 U.S.C. § 5842.................................................................................................. 1, 9, 16

26 U.S.C. § 5843..........................................................................................................16

26 U.S.C. § 5844..........................................................................................................16

26 U.S.C. § 5845.................................................................................................... 1, 16

26 U.S.C. § 5861.................................................................................................. 1, 9, 17

Title II of the Gun Control Act,
    Pub. L. No. 90-618, 82 Stat. 1213 (1968)..........................................................12

## Legislative Materials

H.R. Rep. No. 83-1337 (1954) ....................................................................................28

S. Rep. No. 90-1097 (1968) ........................................................................................28

## Adminsitrative & Executive Materials

Fed. R. Civ. P. 65(d) ..................................................................................................35

**INTRODUCTION**

For nearly a century, the National Firearms Act ("NFA") has regulated the manufacturing, transfer, and possession of certain classes of weapons that Congress deemed particularly dangerous, including short-barreled rifles and shotguns, suppressors, and the "any other weapons" class of concealable firearms (or "AOWs"). As demonstrated in defendants' opening brief, *see* ECF No. 22 ("Defs.' Br."), the NFA's regulation of these weapons fits squarely within Congress's constitutional authority and does not facially violate the Second Amendment. Plaintiffs offer no persuasive response to defendants' arguments, and thus have failed to carry their burden to clearly demonstrate that the challenged NFA regulations are unconstitutional. This Court should therefore grant summary judgment in defendants' favor on both of plaintiffs' claims.[1]

**ARGUMENT**

**I.    ASAF should be dismissed for claim splitting.**

As defendants' opening brief explains, *see* Defs.' Br. 9–10, the American Suppressor Association Foundation's ("ASAF") presence in this case violates the rule against claim splitting, as the American Suppressor Association ("ASA")—of which ASAF is a "wing," *see* ASAF, *About ASA*, https://perma.cc/DYN4-BKQJ—is currently challenging the *same* NFA regulations on the *same* constitutional grounds and seeking the *same* general relief from the *same* defendants in a separate lawsuit brought by the *same* counsel in the Eastern District of Missouri. *See Brown v. ATF*, No. 4:25-cv-1162 (E.D. Mo.). In response, ASAF claims that this degree of duplication of ASA's lawsuit is not enough to bar its participation in this case because it is not the exact same entity as ASA, nor is it

---

[1] Plaintiffs do not contest that they lack Article III standing to challenge the NFA's regulation of weapons manufacturing, *see* Defs.' Br. 7–9; *see also* Pls.' Comb. Reply Mem. of Law in Further Supp. of Pls.' MSJ & Mem. of Law in Opp. to Defs.' MSJ ("Pls.' Opp.") at 3, ECF No. 39, including the requirements that manufacturers, *see* 26 U.S.C. § 5845(m), register and identify their weapons, *see id.* §§ 5841, 5842, and the prohibitions applicable to manufacturers or manufacturing, *see id.* § 5861.

1

ASA's privy. *See* Pls.' Opp. 4–5. But claiming that ASAF is not in privity with ASA is hard to square with the record evidence, which shows that ASAF considers itself to be a "wing" of ASA, *see supra*, that ASAF considers itself to be challenging the NFA in *Brown*, *see* ASAF, *Litigation*, https://perma.cc/RW4G-NV3A ("ASA-F … challenge[s] the constitutionality of the NFA … in *Brown*"), and that ASA has a substantial degree of control over ASAF (*e.g.*, ASA appoints ASAF's Board of Directors), *see* Suppl. Decl. of ASAF ¶ 6, ECF No. 39-1.[2] Given all this, it blinks reality to suggest that ASA is not "adequately representing" ASAF's interests in *Brown. See* Pls.' Opp. 5. Because these entities are concededly entwined in their operations and litigation interests, the Court should find them in privity and thus dismiss ASAF from this case for claim splitting. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 463 (6th Cir. 1999) (res judicata applies to "a nonparty as a privy … where the nonparty's interests were adequately represented by a party with the same interests").

## II.   Plaintiffs assert facial challenges to the relevant NFA requirements and prohibitions, not as-applied challenges.

Since commencing this case, plaintiffs have litigated their claims as *facial* challenges to the NFA's requirements and prohibitions on the manufacture, make, transfer, and possession of short-barreled rifles and shotguns, suppressors, and AOWs. Yet, in challenging these statutory regulations as categorically unconstitutional, plaintiffs suggest that they need not satisfy a facial challenge's demanding standard because, they posit, they are actually asserting *as-applied* challenges. *See* Pls.' Opp. 20–22. But in so arguing, plaintiffs misapprehend the distinctions between facial and as-applied challenges and refuse to acknowledge the inherently facial nature of their claims and arguments.

In determining whether a plaintiff has brought a facial or as-applied challenge, "[t]he label" the plaintiff chooses "is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). "The

---

[2] Notably, ASAF's declarant claims only that the memberships of ASA's and ASAF's Boards of Directors are not "identical"—but *not* that there isn't significant overlap between the two. *See* Suppl. Decl. of ASAF ¶ 6. That ASAF's declarant papered over this relevant fact when given the opportunity to address it speaks volumes.

important point" of distinction is whether the plaintiff's "claim and the relief that would follow … reach beyond" the plaintiff's "particular circumstances." *Id.*; *see also Zillow, Inc. v. Miller*, 126 F.4th 445, 455 (6th Cir. 2025) ("An as-applied constitutional challenge consists of a challenge to the statute's application *only* to the party before the court." (emphasis added and citation omitted)). If so, the plaintiff must "satisfy [the] standards for a facial challenge," *Reed*, 561 U.S. at 194—that is, he must "establish that no set of circumstances exists under which [the challenged law] would be valid," *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

Applying those principles here, plaintiffs' constitutional claims are plainly facial attacks on the challenged NFA regulations. In both their complaint and summary-judgment briefing, plaintiffs have claimed and argued that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs is *categorically* beyond Congress's enumerated powers and, as to short-barreled rifles and suppressors, *categorically* violates the Second Amendment. *See, e.g.*, Am. Compl. for Decl. & Inj. Relief ("Compl.") ¶ 2, ECF No. 16 ("This regulatory regime no longer comports with Congress's constitutionally enumerated powers."); *id.* ("[T]he NFA is unconstitutional as to the untaxed firearms."); *id.* ¶ 3 ("[T]he NFA's regulatory scheme is unconstitutional under the Second Amendment with respect to suppressors and short-barreled rifles."); *id.*, Count I ("The NFA's Regulation of Untaxed Firearms Exceeds Congress's Authority"); *id.* ¶ 81 ("The NFA's registration and related requirements on untaxed firearms exceed Congress's enumerated powers and are thus unconstitutional."); *id.*, Count II ("The NFA's Regulation of Suppressors and Short-Barreled Rifles Violates the Second Amendment"); Mem. of Law ISO Pls.' MSJ ("Pls.' Br.") at 1, ECF No. 18 ("[The NFA's] constitutional basis" has "been eliminated with respect to the making, transferring, and receiving of … suppressors, short-barreled rifles, short-barreled shotguns, and [AOWs].."); *id.* at 2 ("[T]he NFA's regulatory scheme is unconstitutional under the Second Amendment with respect to suppressors and short-barreled rifles."); *id.* at 12 ("The NFA's regulation of untaxed firearms is

3

unconstitutional because it lies beyond any potentially applicable Congressional authority."). Because plaintiffs contend that the NFA's regulation of these weapons is entirely unconstitutional, plaintiffs must "establish that no set of circumstances exists under which [such regulation] would be valid." *Rahimi*, 602 U.S. at 693; *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (this burden is the "price of [a plaintiff's] decision" to facially challenge a law); *cf. Bondi v. VanDerStok*, 604 U.S. 458, 467 (2025) (applying this standard where plaintiffs challenged ATF's "authority to regulate any weapon parts kits or unfinished frames or receivers"). Nowhere have plaintiffs limited their arguments, or asked this Court to limit its constitutional analyses, to the idiosyncrasies of their "particular circumstances." *See Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 522 (6th Cir. 2012).

The relief plaintiffs request confirms the facial nature of their challenges. Based on their categorical claims, plaintiffs ask the Court to declare (i) that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs categorically exceeds Congress's enumerated powers, and (ii) that the Act's regulation of short-barreled rifles and suppressors categorically violates the Second Amendment. *See* Pls.' Br. 45; Compl. ¶ 4; *see also Oklahoma v. United States*, 163 F.4th 294, 311 (6th Cir. 2025) (holding that the plaintiff brought a facial challenge by seeking a declaration that the challenged law was unconstitutional "not only as to the parties before" the court but as to "*all* who fall" under the law). And so, given the nature of plaintiffs' claims, arguments, and requested relief, each of their challenges is clearly a facial attack. Indeed, across *67 pages* of argument on their enumerated-powers and Second Amendment claims, plaintiffs' summary-judgment briefing *never once* mentions their particular circumstances. *See* Pls.' Br. 12–42; Pls.' Opp. 5–39; Notice of Suppl. Auths., ECF No. 46-1. If plaintiffs truly brought a challenge based on their particular circumstances, one would not have expected their briefing to completely ignore those circumstances in arguing the merits of their claims.

Plaintiffs nonetheless suggest that their claims are actually as-applied because, rather than challenge the NFA in its entirety, they challenge only the NFA's requirements and prohibitions "as

4

applied" to four classes of regulated weapons.[3] *See* Pls.' Opp. 20. But that misses the point. Plaintiffs claim that regulations on these weapons are unconstitutional in their entirety, so they must meet a standard that matches that categorical claim and their request for categorical relief. *See United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024) ("The stakes are higher in a facial challenge, so the bar goes up as well …."). Again, whether a plaintiff has brought a facial or as-applied challenge does not turn on the words they choose to characterize the scope of their claim. *Reed*, 561 U.S. at 194. Moreover, a challenge is not as-applied simply because it does not attack an entire Act of Congress. *See, e.g., Rahimi*, 602 U.S. at 693 (facial challenge to 18 U.S.C. § 922(g)(8), not the entire Gun Control Act). Indeed, the Supreme Court in *Reed* rejected this exact argument, finding that the plaintiffs had brought a facial First Amendment challenge even though the claim was, in a sense, "'as applied' in … that it [did] not seek to strike [Washington's Public Records Act] in all its applications, but only to the extent it cover[ed] referendum petitions." 561 U.S. at 194. Plaintiffs' claims are thus no less of a facial attack simply because they challenge the NFA's regulation of four classes of weapons.[4]

---

[3] Plaintiffs do not have a consistent view of their claims. While plaintiffs say that they are bringing both facial and as-applied challenges, *see* Pls.' Opp. 20, the upshot of their argument would be that they are asserting only as-applied challenges, as their claims focus solely on the NFA's application to certain classes of NFA firearms. Regardless, that argument is incorrect, as defendants have explained.

[4] Plaintiffs also point to the fact that their Commerce Clause arguments on summary judgment focus almost entirely on the NFA's regulation of intrastate activities. *See* Pls.' Opp. 22. But that's beside the point. Plaintiffs' *claim for relief* is that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs categorically exceeds Congress's enumerated powers, not only insofar as it applies to intrastate activities. *See* Compl., Count I; Pls.' Br. 12 ("The NFA's regulation of untaxed firearms is unconstitutional because it lies beyond any potentially applicable Congressional authority."). That plaintiffs try to prove that claim by arguing that only *some* of the NFA's applications exceed Congress's Commerce Clause authority proves only that plaintiffs' arguments fail to show facial unconstitutionality, *not* that plaintiffs have brought an as-applied challenge.

III.    **The Constitution empowers Congress to adopt the challenged NFA requirements.**

A.      **The challenged NFA regulations remain a valid exercise of Congress's taxing power.**

As defendants' opening brief explains, *see* Defs.' Br. 10–14, the NFA, in its current form, continues to impose a special occupational tax on businesses that import, manufacture, or deal in short-barreled rifles and shotguns, suppressors, and AOWs. And unrebutted testimony from the Chief of ATF's NFA Division establishes that the challenged NFA requirements and prohibitions continue, in several ways, to assist ATF in collecting and enforcing that special occupational tax, including by providing ATF with information that helps ensure that the tax is being paid by those who owe it, and by deterring those who do business in NFA firearms from evading their tax obligations. *Id.* at 13–14; *see also* Decl. of Stephen Albro ("Albro Decl."), ECF No. 22-4. That unrebutted record evidence thus establishes that the challenged NFA regulations continue to be "in aid of a revenue purpose" and are therefore firmly within Congress's taxing power. *See Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

Plaintiffs' various counterarguments miss the mark:

*First*, plaintiffs don't even acknowledge, much less apply, the correct standard for evaluating whether the challenged NFA regulations are a valid exercise of Congress's taxing power. In their view, these regulations are beyond Congress's power because they are not "plainly adapted" and "proper" for effectuating the special occupational tax. *See* Pls.' Opp. 7–8. But that's the standard for evaluating a challenged law under the *Necessary and Proper Clause*, not the taxing power. *Ream v. U.S. Dep't of Treasury*, 174 F.4th 480, 486–87 (6th Cir. 2026); *United States v. Comstock*, 560 U.S. 126, 134 (2010) (this standard generally "define[s] the scope of the Necessary and Proper Clause"). Plaintiffs cite *no* case applying that standard in assessing a law under Congress's taxing power—much less in the same

6

heightened way.[5] That's because the Supreme Court has long required that a regulation have only a "reasonable relation" to a valid tax (*i.e.*, a revenue-raising purpose) to be justified under the taxing power. *United States v. Doremus*, 249 U.S. 86, 93 (1919); *see also id.* at 95 (explaining that a regulation would need to have "*nothing to do* with facilitating the collection of [tax] revenue" to exceed the taxing power (emphasis added)); *accord, e.g.*, *Minnesota ex rel. Whipple v. Martinson*, 256 U.S. 41, 45 (1921); *James Everard's Breweries v. Day*, 265 U.S. 545, 561 (1924); *Felsenheld v. United States*, 186 U.S. 126, 132 (1902). Plaintiffs never once suggest that the challenged NFA regulations fail *that* constitutional test.

*Second*, defendants' authorities explain exactly how the NFA's application and registration requirements are, at the very minimum, reasonably related to the collection and enforcement of the special occupational tax. *Contra* Pls.' Opp. 9–10. Take *Doremus* and *Nigro v. United States*, 276 U.S. 332 (1928). In upholding the taxation-and-regulation scheme of the Harrison Anti-Narcotics Control Act of 1914 under Congress's taxing power, the Supreme Court in *Doremus* explained that that statute's requirements that certain drugs be sold only by registered dealers and only to patients who had valid prescriptions served a revenue-raising purpose because they kept "the traffic" in the regulated drugs "aboveboard and subject to inspection by those authorized to collect the revenue," and "diminish[ed] the opportunity of unauthorized persons to obtain the drugs and sell them clandestinely without paying the tax" the statute imposed. *See* 249 U.S. at 94.[6] The Supreme Court echoed that same

---

[5] Plaintiffs suggest that this standard requires that a challenged law have far more than a "reasonable" or "rational" relationship to the furtherance of an enumerated power, citing a single district court decision for that proposition. *See* Pls.' Opp. 7 (quoting *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509, 529 (N.D. Tex. 2024)). But that is not how the Supreme Court has understood it. *See Comstock*, 560 U.S. at 134 (in applying that standard to determine "whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power" (emphasis added)).

[6] Rather than meaningfully grapple with *Doremus*'s reasoning and its clear applicability here, plaintiffs focus on immaterial differences between the Harrison Anti-Narcotics Control Act and the NFA, none of which undermine the undisputed fact that the NFA's challenged requirements provide

7

reasoning in *Nigro*, where it explained that Congress can require under its taxing power that all trade (*e.g.*, "sales, purchases and other transactions") in a commodity "be so conducted and evidenced that any dealing in it where the tax has not been paid may be detected and punished and that opportunity for successful evasion may be lessened as far as may be possible," including by requiring "registration of lawful purchasers" to "keep[] selling and buying on a plane where evasion" of a special tax on registered sellers would "be difficult." *See* 276 U.S. at 344–45. Similarly, the NFA's application and registration requirements help keep the traffic in NFA firearms aboveboard, enabling ATF to review all making and transfer applications to ensure that any business associated with the relevant firearm has paid the special occupational tax and reducing the opportunity for those who do business in NFA firearms to evade paying that tax. *See* Defs.' Br. 13–14.

Cases dealing directly with the NFA have upheld the Act's regulatory requirements under Congress's taxing power for the same general reasons—*i.e.*, that they provide ATF with necessary information to enforce the NFA's taxes and deter tax evasion. *Id.* at 11–13 (collecting cases). And critically, these cases confirm that Congress has the power to regulate individuals who never owed a tax under the Act—*e.g.*, by requiring firearm registration and prohibiting possession of unregistered firearms—because such regulatory measures help ensure that those who have manufactured, made, or transferred an NFA firearm pay their applicable taxes—including qualified businesses that owe the special occupational tax. *Id.* (collecting cases).

---

ATF with information that helps it enforce the NFA's special occupational tax and deter tax evasion—and are thus valid exercises of Congress's taxing power under *Doremus* (and *Sonzinsky* and its Sixth Circuit progeny). Moreover, plaintiffs' observation that *Doremus* was a "5–4 … decision" and their assertion that it is "at the outer limit" of Congress's taxing power, *see* Pls.' Opp. 10, are wholly irrelevant to this Court. *See United States v. Wood*, 2016 WL 8131240, at *6 (E.D. Ky. Oct. 3, 2016). Similarly misplaced is plaintiffs' reliance on the *Child Labor Tax Case*, 259 U.S. 20 (1922), where the Supreme Court held that the tax at issue was invalid. *Id.* at 38. Here, there is a concededly valid tax—*i.e.*, the NFA's special occupational tax—and therefore the only question before the Court is whether the challenged NFA regulations are reasonably related to that tax.

*Third*, contrary to plaintiffs' assertions, *see* Pls.' Opp. 7–9, nothing in the NFA suggests that its application and registration requirements were designed to support *only* the Act's making and transfer taxes. Certainly the text doesn't say as much, and nor does the Act's structure support such a conclusion. Indeed, many of the NFA's regulations—like the transfer requirements in § 5812, the basic registration requirement in § 5841, the identification requirements in § 5842, and many of the prohibitions in § 5861—apply equally to both qualified businesses that owe the special occupational tax and individuals who do not. Plaintiffs' suggestion that Congress hermetically sealed these regulations from the special occupational tax is thus unsupported by the text and structure of the Act.[7]

*Fourth*, plaintiffs do not meaningfully dispute defendants' evidence that shows how ATF in practice relies on the challenged NFA regulations to enforce the special occupational tax. *See* Albro Decl. ¶¶ 27–32. Rather, plaintiffs' opposition largely engages in an abstract discussion about what plaintiffs *believe* the NFA's various requirements should be used for. *See* Pls.' Opp. 6–13. But nowhere do they rebut ATF's sworn testimony to the contrary. *See Maxwell v. FCA US, LLC*, 2023 WL 246836, at *2 (6th Cir. Jan. 18, 2023) (a party "must present evidence to create a genuine dispute of fact"); *Lane v. Pulaski Cty.*, 2014 WL 996293, at *8 (E.D. Ky. Mar. 13, 2014) (finding no genuine factual dispute where plaintiff presented only "unsupported assertions" and no "probative evidence to rebut the facts [from] the Government"). So, given this unrebutted testimony, plaintiffs' unfounded views are simply beside the point. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion," a plaintiff cannot rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" (cleaned up)); *Carter v. Rivershell Apartments, LLC*, 2024 WL 4491750, at *4 (6th Cir. May 17, 2024) ("conclusory allegations do not create a genuine dispute of material fact").

But even on their own terms, plaintiffs' arguments are unpersuasive. Plaintiffs principally

---

[7] Nor do plaintiffs cite any authority adopting the view that a statutory regulation can constitutionally support only one tax, which appears to be the upshot of their textual argument.

9

contend that the NFA's application and registration requirements cannot support the special occupational tax because no business subject to that tax would fail to pay it, and thus there are no examples of such "tax circumvention." *See* Pls.' Opp. 11–12. But there are plenty. As already explained, *see* Defs.' Br. 14 n.2, "the NFA Division regularly denies applications where a transferor or transferee hasn't properly paid the [special occupational tax]." *See* Albro Decl. ¶ 29. Indeed, in 2025 alone, "the NFA Division disapproved *691 applications* because of [special-occupational-tax] issues, including a transferor's or transferee's failure to properly pay the [special occupational tax]." *Id.* (emphasis added). Moreover, the NFA Division regularly refers delinquent special-occupational-tax payments to ATF Field Divisions, and also assesses federal firearms licensees penalties and interest for such delinquent payments, if the licensee does not cure the delinquency. *Id.* ¶¶ 30–31. Plaintiffs' speculative assertion that the NFA's application and registration requirements do not support the enforcement of the special occupational tax thus falls flat in light of this unrebutted evidence.[8]

*Finally*, contrary to what plaintiffs suggest, *see* Pls.' Opp. 13, there is no federalism issue here. This case concerns a concededly valid *federal* tax (*i.e.*, the special occupational tax) and Congress's means of enforcing it. Matters of federal taxation like this are exclusively within the province of Congress, not the states. *See Hamilton v. Ky. Distilleries & Warehouse Co.*, 251 U.S. 146, 156 (1919) ("[W]hen the United States exerts any of the powers conferred upon it by the Constitution, no valid objection can be based upon the fact that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose.");

---

[8] Plaintiffs also suggest that, because 691 transfer applications is a fraction of the total number of applications in 2025, this somehow supports their argument that the NFA regulations are not "plainly adapted" to enforcing the special occupational tax. *See* Pls.' Opp. 12. Putting aside that this argument relies on the wrong standard, *see supra*, it too is unpersuasive. That there are relatively few instances of special-occupational-tax circumvention proves, if anything, that the NFA's regulations are *effective* at deterring qualified businesses from engaging in tax evasion in the first place. Moreover, the taxing power is not so limited as to permit Congress to regulate only where tax evasion has become sufficiently pervasive.

*Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981) ("[T]he Court long ago rejected the suggestion that Congress invades areas reserved to the States … simply because it exercises its authority … in a manner that displaces the States' exercise of their police powers.").

The specter of outlandish hypothetical taxing schemes, *see* Pls.' Opp. 13–14, cannot justify constraining Congress's exercise of its taxing power, either. The Supreme Court made clear in *United States v. Kahriger*, 345 U.S. 22 (1953), that in reviewing the validity of regulations under Congress's taxing power, "[u]nless there are provisions[] extraneous to any tax need, courts are without authority to limit the exercise of the taxing power," as "[t]he remedy for excessive taxation is in the hands of Congress, not the courts." *Id.* at 28, 31. Therefore, the only question for this Court is whether the challenged NFA regulations are reasonably related to the special occupational tax, and as explained, *supra* 6–10, they are. "[T]o inquire further … would be to pass the line which circumscribes the judicial department, and to tread on legislative ground." *Ream*, 174 F.4th at 489 (quoting *McCulloch v. Maryland*, 17 U.S. 316, 423 (1819)). As the Sixth Circuit recently warned, a court should "not be so eager to police the limits of Congress's power, that [it] exceed[s] the limits of [its] own." *Id.*

\*       \*       \*

Rather than an imaginative tax on bakeries and sandwiches, *see* Pls.' Opp. 13–14, this case concerns a real tax on those who do business in certain types of weapons that Congress deemed uniquely dangerous. As the Supreme Court and Sixth Circuit have made clear, Congress has the constitutional authority to impose and enforce regulatory requirements that help ensure that those businesses pay their taxes. Because the challenged NFA regulations continue to serve that revenue-raising purpose, they are a valid exercise of Congress' taxing power. On that basis alone, plaintiffs' enumerated-powers claim must fail.

11

B.    **Congress's power under the Commerce Clause independently authorizes the challenged NFA regulations.**

1.    **The NFA is not solely an exercise of Congress's taxing power.**

Plaintiffs go to great lengths to convince this Court not to reach the question of whether the Commerce Clause independently authorizes the challenged NFA regulations. As they see it, the NFA's constitutionality turns on Congress's taxing power. But, for reasons already explained, their arguments on this score are flawed and simply do not reflect how courts adjudicate the constitutionality of an Act of Congress. *See* Defs.' Br. 24–27. A few points bear emphasis.

*First*, plaintiffs invest a considerable amount of time arguing about whether Congress *believed* it was exercising its authority under the Commerce Clause when it first enacted the NFA in 1934. *See* Pls.' Opp. 2, 17–19. But whatever was in Congress's figurative mind at that time, or even when it reenacted the NFA in 1968,[9] is entirely beside the point. When adjudicating the constitutionality of an Act of Congress, courts do *not* ask what powers Congress—or, for that matter, individual legislators— *thought* it was exercising in enacting the legislation. That's because the constitutionality of Congress's actions do "not depend on recitals of the power which it undertakes to exercise." *NFIB v. Sebelius*, 567 U.S. 519, 570 (2012) (quoting *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 144 (1948)). Rather, a court is to "make an *objective* inquiry" by asking "whether Congress *could* have enacted the legislation at issue pursuant to a constitutional provision granting it the power." *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (citation omitted and emphasis added). "As long as Congress had such authority as an objective matter, whether it also had the specific intent to legislate pursuant to that authority is *irrelevant.*" *Id.* (citation omitted and emphasis added); *accord NFIB*, 567 U.S. at 570 (so long as "Congress had the power" to enact legislation, "[t]hat is sufficient to sustain it"); *see also FS Credit*

---

[9] Indeed, the current NFA is not the version that Congress enacted in 1934; it is the version that Congress reenacted in 1968 as Title II of the Gun Control Act. *See* Pub. L. No. 90-618, 82 Stat. 1213, 1227–36 (1968).

12

*Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 146 S. Ct. 1546, 1557 n.5 (2026) ("The judicial task is to read words, not minds.").

Plaintiffs reliance on a footnote from *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999), for the opposition proposition—*i.e.*, that this Court may sustain the NFA only upon those powers that Congress *thought* it was exercising when it passed the Act—is misplaced. *See* Pls.' Opp. 17, 23. *Florida Prepaid* concerned whether the Patent Remedy Act ("PRA") validly abrogated states' sovereign immunity from patent infringement suits pursuant to Congress's authority under Section 5 of the Fourteenth Amendment. *See* 527 U.S. at 630. To resolve that question, the Supreme Court had to determine which, if any, constitutional rights guaranteed by the Fourteenth Amendment Congress was trying to protect against state infringement through the PRA. *Id.* at 639–40. Though the Court considered whether Congress sought to remedy state violations of due process, in a footnote, it explained that it would not consider whether Congress also sought to remedy state violations of the Just Compensation Clause because there was no indication in the text or legislative history of the PRA that Congress intended to remedy state violations of that constitutional right. *Id.* at 641–42 & n.7. But that simply reflects how courts conduct a substantive analysis under Section 5 of the Fourteenth Amendment—which, to state the obvious, is not an issue in this case. What *is* at issue, however, is how this Court should go about determining whether one or more of Congress's enumerated powers can sustain the NFA's constitutionality. On that question, *Florida Prepaid* has absolutely nothing to say.[10]

---

[10] Nor does the footnote that plaintiffs cite from *United States v. Bird*, 124 F.3d 667 (5th Cir. 1997). There, the Fifth Circuit merely explained that Congress cannot, under the Commerce Clause, regulate *only* intrastate commerce, "for its own sake, and not as a means of regulating or affecting interstate commerce." *Id.* at 682 n.15. But that is not what the NFA does, and neither side is arguing that Congress has such power.

*Second*, plaintiffs continue to misread *Sonzinsky* for the proposition that the NFA is *solely* an exercise of Congress's taxing power. *See* Pls.' Opp. 14–15. That is *not* what *Sonzinsky* says. In the section of the opinion from which plaintiffs cite, the Supreme Court was addressing the petitioner's argument that the NFA's special occupational tax exceeds Congress's taxing power because it was intended as a penalty. *Sonzinsky*, 300 U.S. at 512–14. Latching onto the Court's observation that the special occupational tax is "[o]n its face … only a taxing measure," plaintiffs repeatedly insist that the Court therein held that the NFA can be based only on Congress's taxing power. *Id.* at 513. But that's plainly wrong. When read in context, the Court was explaining that the special occupational tax is *not* on its face "a penalty resorted to as a means of enforcing the regulations" in the statute. *Id.* And because the tax is on its face a tax and not a penalty, the Court refused to inquire into Congress's "hidden motives" for imposing it. *Id.* at 513–14. Nowhere in this discussion did the Court suggest, as plaintiffs repeatedly assert, that any of the NFA's regulations (much less the *entire* NFA) are solely an exercise of Congress' taxing power, or that they could not be sustained on another enumerated power.

The other cases plaintiffs cite do not help their argument on this point. Plaintiffs quote *Haynes v. United States*, 390 U.S. 85 (1968), and *NFIB* as saying that the NFA is a "valid exercise of the taxing powers," and cite *United States v. Springer*, 609 F.3d 885 (6th Cir. 2010), *United States v. Thompson*, 361 F.3d 918 (6th Cir. 2004), and *United States v. Decker*, 292 F.2d 89 (6th Cir. 1961), along with other out-of-circuit cases, for the basic proposition that the NFA is "premised" on the taxing power. *See* Pls.' Br. 17–18. Defendants agree. *See supra* 6–11; Defs.' Br. 10–14. But just because an Act of Congress is a valid exercise of one enumerated power says nothing about whether it can also be a valid exercise of another enumerated power. *United States v. Morrison,* 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one *or more* of its powers enumerated in the Constitution." (emphasis added)); *Legal Tender Cases*, 79 U.S. (12 Wall) 457, 534 (1870) (Congress is permitted to "group together any number of [constitutional powers] and infer from them all that the power claimed has been

14

conferred."); Defs.' Br. 24 (collecting cases). Plaintiffs have thus cited no authority supporting their view that the NFA is solely an exercise of Congress's taxing power.

On the other side of the ledger are numerous courts, including the Sixth Circuit, that *have* upheld the NFA on other grounds, namely the Commerce Clause. *See, e.g.*, *United States v. Wilson*, 440 F.2d 1068 (6th Cir. 1971); *United States v. Jones*, 976 F.2d 176, 184 (4th Cir. 1992); *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994); *United States v. Pearson*, 8 F.3d 631, 633 (8th Cir. 1993); *United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir. 1992); *United States v. Houston*, 103 F. App'x 346, 349–50 (10th Cir. 2004). Plaintiffs only response to these cases is to observe that some of them involve machineguns, which they suggest are different for purposes of the Commerce Clause because Congress prohibited civilian possession of post-1986 machineguns. *See* Pls.' Opp. 16. Setting aside that this argument is incompatible with plaintiffs' contention that, under *Sonzinsky*, the NFA can *only* be an exercise of the taxing power, *supra* 14, plaintiffs never cogently explain why Congress would have the authority under the Commerce Clause to completely ban a type of firearm but *not* have the authority to merely regulate it. And as explained below, *see infra* 20, this is a distinction without a constitutional difference.

Regardless, plaintiffs cannot escape *Wilson*, where the Sixth Circuit held that the NFA is constitutional under the Commerce Clause. *See* 440 F.2d at 1069. While plaintiffs try to wriggle out of *Wilson*'s bounds by claiming that it's been undermined by *United States v. Lopez*, 514 U.S. 549 (1995), *see* Pls.' Opp. 15, as defendants have explained, *see* Defs.' Br. 25–26; *infra* 22, *Lopez* does not contradict *Wilson*. So contrary to what plaintiffs suggest, *see* Pls.' Opp. 15, *Wilson* binds this Court unless and until the Supreme Court or the Sixth Circuit "tells it differently." *See Wood*, 2016 WL 8131240, at *6; *accord United States v. Pritchard*, 392 F. App'x 433, 439 (6th Cir. 2010). That alone should foreclose plaintiffs' Commerce Clause arguments.

*Third*, plaintiffs' arguments regarding the NFA's text are puzzling. Plaintiffs observe that the NFA's text makes clear that its requirements facilitate the collection and enforcement of the Act's

15

taxes. *See* Pls.' Opp. 17–18. Again, defendants agree. *See* Defs.' Br. 10–14; *supra* 6–11. But just because a regulatory requirement supports a tax says nothing about whether that requirement also validly regulates interstate commerce, and plaintiffs cite no authority suggesting that a regulatory requirement cannot do both, which is the upshot of their textual argument. *See* Pls.' Opp. 17–18. Indeed, the Supreme Court has explained that the taxing power can, "of course, be adopted as a means to carry into operation another power also expressly granted," like the power to regulate interstate commerce. *United States v. Butler*, 297 U.S. 1, 69 (1936); *see also supra* 15 (citing cases finding that the NFA's regulations support taxes *and* regulate interstate commerce); *cf.* Max Pam, *Powers of Regulation Vested in Congress*, 24 Harv. L. Rev. 77, 102 (1910) (quoting Justice Story: "[T]he taxing power … is often applied as a regulation of commerce."). And where, as here, a statute regulates commercial actors who engage in commercial activities as part of an interstate commodity market to enforce a statutory tax, it's hardly a leap to conclude that such regulation simultaneously regulates interstate commerce.

Plaintiffs also continue to ignore the practical reality that, by its basic operation, the NFA's text directly regulates interstate commerce in certain weapons. *See* Defs.' Br. 15–16, 19–20, 26. Nowhere do plaintiffs contest that the "firearms" that the NFA regulates, *see* 26 U.S.C. § 5845(a)(1)–(8), are nearly always commodities manufactured, sold, and purchased in an interstate firearms market. *See* Defs.' Br. 15 (noting that 91% of NFA firearms transferred in 2025 were transferred interstate). Nor do they contest that the "manufacturers," "dealers," and "importers" that the NFA regulates, *see, e.g.*, 26 U.S.C. §§ 5802, 5841, 5842, 5843, 5845, are commercial actors that participate in that interstate firearms market, *see* Defs.' Br. 15–16, 26. Nor can they seriously contest that the importing, manufacturing, distributing, dealing, selling, leasing, transporting, and purchasing that the NFA expressly regulates, *see, e.g.*, 26 U.S.C. §§ 5802, 5812, 5841, 5842, 5843, 5844, 5845, is commerce itself. *See* Defs.' Br. 15–16, 26. To then maintain that the NFA's regulation of commerce is not "discernible"

from the statutory text, *see* Pls.' Opp. 17–19, defies reality.[11]

### 2.    The NFA regulates persons and things in interstate commerce.

As defendants' opening brief explains, *see* Defs.' Br. 15–17, in the vast majority of applications, the challenged NFA requirements and prohibitions directly regulate manufacturers, distributors, dealers, and purchasers (*i.e.*, "the persons") as they participate in an interstate firearms market and the firearms (*i.e.*, "the things") that flow through that market, *see Lopez*, 514 U.S. at 558, and thereby regulate "the ingredients of interstate commerce itself," *see Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring in the judgment). Plaintiffs dispute none of this. Indeed, they nowhere attempt to explain how the NFA's regulation of these interstate commercial actors, interstate commercial activities, and commodities flowing in interstate commerce can possibly exceed Congress's Commerce Clause authority.[12] Instead, they suggest that it is all irrelevant because they have argued on summary judgment that the NFA exceeds Congress's Commerce Clause authority only insofar as it regulates intrastate activities.[13] *See* Pls.' Opp. 22. But that's a defect in plaintiffs' argument.

---

[11] Plaintiffs also argue that 26 U.S.C. § 5861(j)'s and (k)'s express references to foreign or interstate commerce show that Congress "knew how to invoke its Commerce Clause powers," but chose not to in enacting the NFA's other provisions. *See* Pls.' Opp. 17. But those textual references to foreign and interstate commerce serve only to *limit* the reach of those statutory provisions to activities or firearms that are *in* foreign or interstate commerce, *see* 26 U.S.C. § 5861(j) ("to transport, deliver, or receive any firearm *in* interstate commerce which has not been registered" (emphasis added)); *id.* § 5861(k) ("to receive or possess a firearm which *has been imported or brought into* the United States in violation of section 5844" (emphasis added)), whereas other NFA provisions apply also to intrastate activities that substantially affect interstate commerce. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) (Congress uses the "words 'in commerce'" to limit "the reach" of a provision so as not to extend "to the outer limits of its authority under the Commerce Clause").

[12] Plaintiffs even appear to concede that at least 26 U.S.C. § 5861(j) and (k) are valid exercises of the Commerce Clause. *See* Pls.' Opp. 17–18 (claiming that "these provisions … invoke [Congress's] Commerce Clause powers"). So even in plaintiffs' view, the government could constitutionally prosecute an individual for moving or receiving an unregistered NFA firearm in interstate or foreign commerce. *See* 26 U.S.C. § 5861(j) (making it unlawful "to transport, deliver, or receive any firearm in interstate commerce which has not been registered").

[13] This claim is hard to square with plaintiffs' assertion that the challenged NFA regulations "cannot be justified" as a regulation of "persons" or "things" in interstate commerce, though they offer no support for that position. *See* Pls.' Opp. 22–23 (emphasis removed).

17

As explained, *supra* 3, 5 n.4, plaintiffs' *claim for relief* is that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs *categorically* exceeds Congress's enumerated powers. *See, e.g.*, Compl. ¶ 2 ("[The NFA] no longer comports with Congress's constitutionally enumerated powers."); *id.*, Count I ("The NFA's Regulation of Untaxed Firearms Exceeds Congress's Authority"); *id.* ¶ 81 ("The NFA's registration and related requirements on untaxed firearms exceed Congress's enumerated powers and are thus unconstitutional."); Pls.' Br. 12 ("The NFA's regulation of untaxed firearms is unconstitutional because it lies beyond any potentially applicable Congressional authority."). It is thus plaintiffs' burden to "clearly demonstrate[]," *NFIB*, 567 U.S. at 538 (citation omitted), that the challenged NFA regulations facially exceed Congress's authority—*i.e.*, that there is "no set of circumstances" under which those regulations can be applied *within* Congress's authority, *Rahimi*, 602 U.S. at 693 (citation omitted). Therefore, if this Court agrees with plaintiffs that the challenged NFA regulations facially exceed Congress's taxing power, it must then decide whether those regulations also facially exceed Congress's Commerce Clause authority in order to resolve plaintiffs' enumerated-powers claim. But as explained, *see* Defs.' Br. 15–17, in the overwhelming majority of applications, the challenged NFA regulations fall within the heartland of the Commerce Clause by regulating commercial actors that participate in, and commodities that flow through, an interstate firearms market. *See Lopez*, 514 U.S. at 558. And that the NFA also regulates "some purely intrastate activity" as part of its broader regulation of a class of commercial activities is immaterial, because this Court is not free to "excise" those intrastate activities from the NFA's valid regulatory scheme. *See Raich*, 545 U.S. at 22. So even if plaintiffs were correct that the NFA's regulation of purely intrastate activities exceeds Congress's authority under the Commerce Clause, that would not advance their facial enumerated-powers claim. The Court can therefore resolve that claim on this ground alone.

Plaintiffs try to shrug all of this off, insisting that they need not satisfy the typical facial-challenge standard to prevail on their facial Commerce Clause theory. As they see it, all they need to

18

show to prevail is that the challenged NFA regulations *sometimes* exceed Congress's Commerce Clause authority, *see* Pls.' Opp. 22—that is, the exact opposite of the typical standard, *see United States v. Salerno*, 481 U.S. 739, 745 (1987) ("The fact that" a challenged law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid …."). But plaintiffs cite *no* court that applies their preferred standard in resolving facial Commerce Clause challenges. The Sixth Circuit doesn't. *See, e.g.*, *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 543–44 (6th Cir. 2011) (applying the typical facial-challenge standard), *rev'd on other grounds by NFIB*, 567 U.S. at 552–58; *accord id.* at 556 (Sutton, J., concurring in part and concurring in the judgment). Nor do other Courts of Appeals. *See, e.g.*, *United States v. Pugh*, 90 F.4th 1318, 1325 (11th Cir. 2024) (applying the typical facial-challenge standard); *Tex. Top Cop Shop, Inc. v. Garland*, 2024 WL 5203138, at *2 (5th Cir. Dec. 23, 2024) (same). And nor do courts within this Circuit. *See, e.g.*, *United States v. Mills*, 378 F. Supp. 3d 563, 571 (E.D. Mich. 2019). Indeed, the Supreme Court recently confirmed that, except in the First Amendment context, the typical standard governs all facial challenges. *See NetChoice*, 603 U.S. at 723; *see also Salerno*, 481 U.S. at 745 (there is no "'overbreadth' doctrine" outside the First Amendment); *Sabri v. United States*, 541 U.S. 600, 604 (2004) (applying the typical facial-challenge standard in resolving a facial enumerated-powers claim).

Nothing in *Lopez* is to the contrary. *Contra* Pls.' Opp. 20–21. There, the Supreme Court held that the Gun-Free School Zones Act was *categorically* invalid under the Commerce Clause because it regulated neither the channels of interstate commerce, nor the instrumentalities of interstate commerce, nor (unlike the NFA) the persons or things in interstate commerce, nor (unlike the NFA) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 559–68. And contrary to what plaintiffs' claim, *see* Pls.' Opp. 20–21, nowhere did the Court suggest that the Gun-Free School Zones Act could be applied constitutionally in some circumstances.

19

3.    **The NFA regulates intrastate activities that substantially affect interstate commerce.**

As defendants opening brief explains, *see* Defs.' Br. 19–22, the NFA's regulation of intrastate activities is likewise a valid exercise of Congress's Commerce Clause authority. The NFA regulates a class of activities that are "quintessentially economic": the manufacture, distribution, sale, and possession of weapons that, in Congress's judgment, are particularly susceptible to criminal misuse. *See Raich*, 545 U.S. at 25. Although these regulated activities occur most often as part of an interstate market in NFA firearms, *see* Defs.' Br. 15–16, failing to regulate the *purely intrastate* manufacture, distribution, sale, and possession of these same weapons would clearly "undercut" the NFA's regulation of that interstate market by creating an unregulated sub-market in unregistered NFA firearms. *See Raich*, 545 U.S. at 18. And for that reason, it was (at the very least) rational for Congress not to exempt those intrastate activities from the NFA's broader regulatory scheme.

Plaintiffs' arguments to the contrary largely rehash their mistaken view of the relevant precedent and continue to deny the same basic realities. While defendants have already rebutted these arguments, a few points deserve emphasis.

*First*, underlying virtually all of plaintiffs' arguments is their asserted view that the challenged NFA regulations have "nothing to do with commerce" or economic activity. *See* Pls.' Opp. 25; *id.* at 24 (claiming that firearm "possession, making, and transfer" are not "commercial activities"). But the Supreme Court doesn't see it that way. As it explained in *Raich*, "the production, distribution, and consumption of commodities," like NFA firearms, are "quintessentially economic" activities, and "[p]rohibiting the intrastate possession or manufacture of an article of commerce," whether entirely or, like the NFA, when certain "regulatory requirements" are not met, "is a rational (and commonly utilized) means of regulating commerce in that product." 545 U.S. at 25–26. And, contrary to what plaintiffs suggest, *see* Pls.' Opp. 25, that Congress sought to advance certain policy objectives (*e.g.*, stemming criminal misuse of NFA weapons) by regulating interstate commerce in this way is entirely

20

beside the point. *See United States v. Darby*, 312 U.S. 100, 115 (1941) ("The motive and purpose of a regulation of interstate commerce are matters for the legislative judgment upon the exercise of which the Constitution places no restriction and over which the courts are given no control…. Whatever their motive and purpose, regulations of commerce which do not infringe some constitutional prohibition are within the plenary power conferred on Congress by the Commerce Clause." (citations omitted)); *see also, e.g.*, *Raich*, 545 U.S. at 10 (upholding under the Commerce Clause a statutory scheme that, as a policy matter, sough to curtail illicit trade in the regulated commodity, like the NFA).

*Second*, plaintiffs contend that the NFA does not regulate an interstate firearms "market." *See* Pls.' Opp. 26–28. But that's clearly wrong. As explained, *see* Defs.' Br. 15–16, the NFA regulates virtually every commercial step that occurs in the interstate market in NFA firearms, including importing, manufacturing, distributing, transporting, dealing in, transferring, purchasing, and possessing each and every NFA firearm within that market. Still, plaintiffs argue that that level of regulation is insufficient under the Commerce Clause because the NFA does not regulate the price of NFA firearms, eliminate or cap their supply, or "otherwise change any market conditions." *See* Pls.' Opp. 26 (cleaned up). But plaintiffs cite *no* case that so limits Congress's authority to regulate intrastate activities that substantially affect interstate commerce. Indeed, Congress was not regulating the price or capping the supply of any commodity when it regulated loan sharking, *see Perez v. United States*, 402 U.S. 146, 150–57 (1971), the operation of hotels, *see Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 253–62 (1964), or mining, *see Hodel*, 452 U.S. at 275–83. At any rate, the NFA *does* "change … market conditions," *contra* Pls.' Opp. 26, by regulating under what circumstances and the process by which certain firearms can be lawfully manufactured, distributed, sold, purchased, and possessed. And it *does* seek to eliminate by regulation the supply and demand for unregistered NFA firearms. In that way, the NFA employs the "rational (and commonly utilized) means of regulating commerce in [a] product" by "requiring that [an NFA firearm] be withdrawn from the market as a result of the failure

21

to comply with regulatory requirements." *See Raich*, 545 U.S. at 26. And it does so, moreover, as an essential part of Congress's comprehensive regulation of the broader interstate firearms market, having been reenacted in 1968 as Title II of the Gun Control Act. *See supra* 12 n.9.

*Third*, plaintiffs continue to misrely on *Lopez* and *Morrison*. As already explained, *see* Defs.' Br. 22–23, the NFA is nothing like the laws challenged in *Lopez* and *Morrison*, which "ha[d] nothing to do with 'commerce' or any sort of economic enterprise," but instead regulated *only* purely intrastate, noncommercial activities. *Lopez*, 514 U.S. at 561; *Morrison*, 529 U.S. at 613. As defendants have established, *see* Defs.' Br. 19–22, the NFA's regulation of intrastate activities is instead akin to the law challenged in *Raich*, which upheld a statutory scheme's regulation of intrastate activities as part of regulating a broader class of commercial activities under the Commerce Clause without analyzing most of *Lopez* and *Morrison*'s considerations. *Contra* Pls.' Opp. 25. In such cases, *Raich* explains, *Lopez* and *Morrison* have nothing to say about a statute's constitutionality. *See Raich*, 545 U.S. at 23–26; *see also id.* at 39 (Scalia, J., concurring in the judgment) ("Neither case involved the power of Congress to exert control over intrastate activities in connection with a more comprehensive scheme of regulation; *Lopez* expressly disclaimed that it was such a case, and *Morrison* did not even discuss the possibility that it was."). Plaintiffs' continued reliance on *Lopez* and *Morrison*'s considerations in this context thus cannot be squared with the Supreme Court's subsequent decision in *Raich. See, e.g.*, *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1252 (11th Cir. 2008) ("*Raich* makes clear that when a statute regulates economic or commercial activity, *Lopez* and *Morrison*," and the "considerations" they analyzed, "are inapposite.").

**C.     The Necessary and Proper Clause further supports the challenged NFA regulations.**

As defendants opening brief explains, *see* Defs.' Br. 29–30, Congress's authority under the Necessary and Proper Clause further supports the challenged NFA regulations. In response, plaintiffs don't dispute that the Necessary and Proper Clause empowers Congress to effectuate its taxing and

22

Commerce Clause powers through the means it employed in the NFA (*e.g.*, application and registration requirements and prohibitions). *See* Defs.' Br. 29. Rather, plaintiffs' opposition largely boils down to their view that Congress has not validly exercised its taxing or Commerce Clause powers in enacting any relevant part of the NFA, and thus the challenged NFA regulations are not effectuating an enumerated power. *See* Pls.' Opp. 6, 29. That argument fails, however, for reasons already explained. *See* Defs.' Br. 10–28; *supra* 6–22.

Plaintiffs also remarkably fail to address the Sixth Circuit's decision in *Ream*, which upheld the federal ban on at-home spirits distilling as "a necessary and proper means of collecting the federal excise tax on distilled spirits." 174 F.4th at 483. As defendants explained, *see* Defs.' Br. 30, if, as *Ream* held, Congress could reasonably conclude that, without the ban on at-home spirits distilling, distillers could more easily evade paying federal taxes on their spirits by hiding stills in homes rather than conducting their distilling operations in properties dedicated to and registered with the federal government for that purpose, *see Ream*, 174 F.4th at 487, then *a fortiori* Congress could reasonably conclude that, without the NFA's existing regulations, those who do business in NFA firearms could more easily evade paying the special occupational tax by making it easier to manufacture and trade firearms without ATF's knowledge and oversight, *see* Defs.' Br. 10–14; *see also, e.g.*, *Doremus*, 249 U.S. at 94; *Nigro*, 276 U.S. at 344. But rather than grapple with the clear applicability of *Ream*'s holding and reasoning in this case, plaintiffs offer no response, leaving no other conclusion than that the challenged NFA regulations are a necessary and proper means of collecting and enforcing the special occupational tax. *See Ream*, 174 F.4th at 483.[14]

---

[14] Plaintiffs' reliance on *Landor v. La. Dep't of Corrs. & Pub. Safety*, 146 S. Ct. 1931 (2026), is misplaced. *See* Notice of Suppl. Auths. at 1–2. There, the Supreme Court held that the Religious Land Use and Institutionalized Persons Act ("RLUIPA")—legislation enacted under Congress's Spending Clause authority—did not authorize a private right of action for money damages against state officers in their private capacities. *Landor*, 146 S. Ct. at 1942. In reaching that conclusion, the Court explained

**IV.    The challenged NFA requirements comport with the Second Amendment.**

As explained, *see* Defs.' Br. 30–37, plaintiffs' Second Amendment challenge fails in its entirety under binding precedent. Plaintiffs' arguments to the contrary are unavailing.

*First*, plaintiffs cannot escape the fact that *United States v. Miller*, 307 U.S. 174 (1939), and *District of Columbia v. Heller*, 554 U.S. 570 (2008), foreclose their Second Amendment claim as it pertains to short-barreled rifles. *See* Defs.' Br. 30–31. While plaintiffs insist that neither *Miller* nor *Heller* were definitive that the Second Amendment does not protect the right to possess short-barreled shotguns, *see* Pls.' Opp. 32–33, *Heller* could not have been clearer: *Miller* holds that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*," a holding that is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 625, 627 (emphasis added). And Courts of Appeals, including the Sixth Circuit, have thus understood *Miller* and *Heller* to hold as an "explication[] of law" "that the Second Amendment does not protect a right to possess short-barreled shotguns." *United States v. Hernandez*, 159 F.4th 425, 427–28 & n.1 (5th Cir. 2025); *accord United States v. Bridges*, 150 F.4th 517, 521 (6th Cir. 2025) ("*Miller* held that … the short-barreled shotgun[] was not eligible for Second Amendment protection." (cleaned up)); *United States v. Brooks*, 2025 WL 2939404, at *2 (6th Cir. Oct. 16, 2025); *United States v. Stepp-Zafft*, 733 F. App'x 327, 329 (8th Cir. 2018); *United States v. Rush*, 130 F.4th 633, 636–37 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 985 (2025);

_____

that the Necessary and Proper Clause does not support inferring this private right of action from RLUIPA, because doing so would not "help carry into execution" any of Congress's enumerated powers, but would rather undermine inherent limitations on Congress's Spending Clause authority—*i.e.*, that the Spending Clause does not confer any regulatory authority, but merely permits Congress to impose conditions on federal funding on those who knowingly and voluntarily accept them. *Id.* at 1946–47 (cleaned up). But unlike the Spending Clause, Congress's taxing power *does* confer regulatory authority to enforce federal taxes, *see Doremus*, 249 U.S. at 94; *Nigro*, 276 U.S. at 344; *Sonzinsky*, 300 U.S. at 513, and with such authority, Congress can regulate individuals who have no tax obligation, *see Nigro*, 276 U.S. at 344; Defs.' Br. 11–13 (collecting cases), so long as such regulation is reasonably related to a valid tax, *supra*.

24

*United States v. Morgan*, 150 F.4th 1339, 1342–43 (10th Cir. 2025), *cert. denied*, 146 S. Ct. 907 (2025); *United States v. Robinson*, 2025 WL 870981, at *5 (11th Cir. Mar. 20, 2025), *cert. denied*, 146 S. Ct. 995 (2025); *United States v. Saleem*, 2024 WL 5084523, at *1 (4th Cir. Dec. 12, 2024).[15]

Plaintiffs offer no persuasive reason this Court should treat short-barreled rifles differently than short-barreled shotguns under the Second Amendment. As explained, *see* Defs.' Br. 29, there is a *unanimous* view among courts throughout the country—including several Courts of Appeals and in numerous opinions post-*Bruen*—that short-barreled shotguns and rifles are constitutionally indistinguishable. *See, e.g.*, *Rush*, 130 F.4th at 637; *Robinson*, 2025 WL 870981, at *5; *United States v. Cox*, 906 F.3d 1170, 1185–86 (10th Cir. 2018); *United States v. Sinclair*, 2026 WL 1169894, at *6 (S.D. Fla. Apr. 30, 2026); *United States v. Vishnevski*, 2026 WL 1078194, at *2 (S.D. Ill. Apr. 21, 2026); *United States v. Conner*, 2025 WL 2858030, at *3–4 (W.D. Tex. Sept. 19, 2025); *United States v. Chan*, 2024 WL 4028019, at *3–4 (D. Haw. Sept. 3, 2024); *United States v. Myers*, 2024 WL 2924081, at *3–4 (D. Nev. June 10, 2024); *United States v. Holder*, 2024 WL 1012914, at *2 (N.D. Ga. Mar. 9, 2024); *Watterson v. ATF*, 2024 WL 897595, at *18 (E.D. Tex. Mar. 1, 2024); *United States v. Shepherd*, 2024 WL 71724, at *5 (S.D. Miss. Jan. 5, 2024) , *aff'd*, 2026 WL 907785 (5th Cir. Apr. 2, 2026); *United States v. Jernigan*, 750 F. Supp. 3d 579, 586–88 (E.D. Va. 2024); *Second Amend. Found., Inc v. ATF*, 702 F. Supp. 3d 513, 536–37 (N.D. Tex. 2023); *United States v. Miller*, 2023 WL 6300581, at *1–3 (N.D. Tex. Sept. 27, 2023); *United States v. Danielson*, 2023 WL 5288049, at *5 (D. Minn. Aug. 17, 2023); *United States v. Royce*, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023); *United States v. Robinson*, 2023 WL 12066735, at *4 (M.D.

---

[15] Insofar as plaintiffs suggest that *Wolford v. Lopez*, 2026 WL 1825723 (U.S. June 25, 2026), overruled *Miller* and *Heller* on this point, *see* Notice of Suppl. Auths. at 2–3, they're mistaken. *See Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 190 (1990) (explaining that there is no "*sub silentio* overrul[ing]" of prior Supreme Court precedent); *Hohn v. United States*, 524 U.S. 236, 252–53, (1998) ("Our decisions remain binding precedent until we see fit to reconsider them…."). *Wolford* concerns how a government may regulate where firearms are possessed. The Supreme Court's analysis of that distinct question provides no guidance here.

Fla. Feb. 9, 2023); *United States v. Rush*, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023), *aff'd*, 130 F.4th 633 (7th Cir. 2025); *United States v. Beaty*, 2023 WL 9853255, at *7 (M.D. Fla. Jan. 20, 2023); *United States v. Sawyer*, 2018 WL 572094, at *4 (D. Kan. Jan. 26, 2018); *United States v. Cox*, 235 F. Supp. 3d 1221, 1227 (D. Kan. 2017), *aff'd*, 906 F.3d 1170 (10th Cir. 2018); *United States v. Barbeau*, 2016 WL 1046093, at *3 (W.D. Wash. Mar. 16, 2016); *see also Mock v. Garland*, 75 F.4th 563, 596 (5th Cir. 2023) (Higginson, J., dissenting); *cf. Brooks*, 2025 WL 2939404, at *3; *Stepp-Zafft*, 733 F. App'x at 329. Plaintiffs completely ignore this overwhelming judicial consensus, claiming that defendants' argument is merely "*ipse dixit* handwaving." *See* Pls.' Opp. 32. But the considered views of at least *twenty nine* judges is hardly *ipse dixit*. And, one might wonder, how many judges have adopted plaintiffs' view? Zero, it appears. And for reasons explained in the cases cited above, this Court shouldn't be the first.

*Second*, as explained, *see* Defs.' Br. 31–33, the Court can reject plaintiffs' Second Amendment claim because the NFA is a presumptively constitutional shall-issue licensing scheme with respect to the unique weapons it covers (*e.g.*, short-barreled rifles, suppressors), as now three Courts of Appeals have held. *See United States v. Peterson*, 161 F.4th 331, 339 (5th Cir. 2025), *cert. denied*, 2026 WL 1052030 (U.S. Apr. 20, 2026); *United States v. Speed*, 175 F.4th 272, 285–86 (4th Cir. 2026); *United States v. DeBorba*, 177 F.4th 1005, 1012–13 (9th Cir. 2026). In response, plaintiffs principally contend that the NFA "is not a licensing regime at all," but merely a "registration regime." *See* Pls.' Opp. 36–37. But that's the wrong way to look at it. In its basic design, the NFA requires that any individual who seeks to lawfully manufacture, make, transfer, receive, or possess an NFA firearm first obtain the government's permission—or, one could say, license—to do so. *See* 26 U.S.C. § 5812(a) ("A firearm shall not be transferred unless …. the Secretary has approved the transfer …."); *id.* § 5812(b) ("The transferee of a firearm shall not take possession of the firearm unless the Secretary has approved the transfer …."); *id.* § 5822 ("No person shall make a firearm unless he has … obtained the approval of the Secretary"). And as a *condition* to obtain the government's permission to lawfully engage in these activities, the NFA

26

requires, among other things, that the firearm be registered to whomever will possess it. *See id.* § 5812(a) (requiring registration to the transferee as one of several conditions to obtain approval to lawfully transfer a firearm); *id.* § 5822 (requiring registration to the maker as one of several conditions to obtain approval to lawfully make a firearm); *see also id.* § 5841(c). Plaintiffs contention that the NFA does not function as a licensing scheme is thus belied by the text, structure, and practical operation of the statute. And contrary to what plaintiffs suggest, *see* Pls.' Opp. 36, like other licensing schemes, the NFA *is* designed to reduce the likelihood that those who are not law-abiding and responsible citizens will obtain NFA firearms, including by prohibiting approval of an application where the make or transfer would place the maker or transferee in violation of the law. *See* 26 U.S.C. §§ 5812(a), 5822.[16]

Plaintiffs also argue that the presumption of constitutionality should fall away in this case, because the government has put the NFA "toward abusive ends" by creating a "registry" of NFA firearms. Assuming plaintiffs are referring to the National Firearms Registration and Transfer Record ("NFRTR"), the government's maintenance of the NFRTR is *statutorily required. See* 26 U.S.C. § 5841(a). Maintaining the NFRTR is thus not an "abuse" of the NFA. *See* Abuse, *Black's Law Dictionary* (12th ed. 2024) ("A *departure* from legal … use; misuse." (emphasis added)).

*Third*, while it is unnecessary for the Court to reach *Bruen*'s second step given the threshold issues that defeat plaintiffs' Second Amendment claim, the NFA's regulation of short-barreled rifles and suppressors is "consistent with this Nation's historical tradition of firearm regulation." *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). As explained, *see* Defs.' Br. 34, the Supreme Court has consistently acknowledged a historical "tradition of prohibiting the carrying of 'dangerous

---

[16] While plaintiffs disagree that shall-issue licensing schemes are presumptively constitutional, *Peterson*, *Speed*, *DeBorba*, and other post-*Bruen* cases explain exactly why that conclusion is consistent with *Bruen* and *Heller. See* Defs.' Br. 31–33. And contrary to what plaintiffs contend, *see* Notice of Suppl. Auths. at 4, *Wolford* does not "abrogate" those decisions, as it says nothing about *Peterson*, *Speed*, or *Deborba*, their rules of decision, or how lower courts should understand and apply Section 3 of *Heller* or footnote 9 of *Bruen. See also supra* 25 n.15.

and unusual weapons,'" which permits a legislature to prohibit or regulate those arms that are not "typically possessed by law-abiding citizens for lawful purposes" "like self-defense." *Heller*, 554 U.S. at 624–25, 627 (citations omitted). Moreover, there is a related historical tradition of prohibiting or regulating particularly dangerous and concealable weapons that are uniquely susceptible or adapted to criminal misuse, as reflected in several 19th century state court decisions upholding such laws against constitutional attack. *See* Defs.' Br. 34 & n.7. Congress has thus correctly determined, consistent with similar legislative conclusions throughout our Nation's history, that the uniquely dangerous and concealable weapons regulated under the NFA are a proper subject of regulation. *See* H.R. Rep. No. 83-1337, at A395 (1954) (NFA firearms possess unique characteristics that make them uniquely susceptible to criminal misuse); S. Rep. No. 90-1097 (1968) ("the NFA … has long been the vehicle for removing from commerce weapons which are peculiarly susceptible to criminal use").

Plaintiffs fault defendants for not citing any historical analogues, *see* Pls.' Opp. 33, but that overlooks defendants' cited sources, *see* Defs.' Br. 34 & n.7. For example, in 1870, Tennessee enacted a statute that prohibited the possession of various concealable weapons, including "belt or pocket pistol[s]." *Andrews v. State*, 50 Tenn. 165, 171 (1871) (citation omitted). The Tennessee Supreme Court concluded that the statute's prohibitions related to pocket pistols did not violate a state constitutional analogue to the Second Amendment. In reaching that conclusion, the court explained that the right to keep arms did not extend to "every thing that may be useful for offense or defense," but instead extended only to "the usual arms of the citizen of the country," the "use of which will properly train and render him efficient in defense of his own liberties, as well as of the State." *Id.* at 179. Applying that test, the court concluded that the particularly concealable belt or pocket pistol (among other concealable weapons) did not constitute the usual and protected arms and could thus be constitutionally prohibited. *Id.* at 186. By contrast, the court concluded that the statute's regulation of revolvers was potentially unconstitutional, because at least some revolvers were—unlike the other

28

weapons regulated by the statute—properly "adapted to" the aims of defense undergirding the constitutional right. *Id.*

Along the same lines, in *Fife v. State*, 31 Ark. 455, 461 (1876), the Arkansas Supreme Court confronted a state statute prohibiting the carrying of various concealable weapons, including pistols. In addressing a state constitutional challenge to the statute's prohibition as applied to pistols, the court construed the statute in light of "the company in which the pistol is placed" as applying only to particularly small, concealable pistols—that is, those that were "usually carried in the pocket, or of a size to be concealed about the person, and used in private quarrels and brawls." *Id.* With that limitation, the court concluded that the legislature could properly prohibit the possession of such pistols "without any infringement of the" state constitutional right. *Id.*; *see also, e.g., State v. Kerner*, 107 S.E. 222, 225 (N.C. 1921) (describing similar "reasonable regulation[s]" that applied to "pistols of small size which are not borne as arms but which are easily and ordinarily carried concealed").

This historical tradition of regulating uniquely dangerous and concealable weapons is mutually reinforcing of the distinct historical tradition permitting legislatures to prohibit the carrying of weapons that are not in common use for lawful purposes. *See Heller*, 554 U.S. at 581-82, 625; *Bridges*, 150 F.4th at 527–28. As the authorities cited above make clear, the reason that uniquely dangerous and concealable weapons have generally been held unprotected is that those weapons are not commonly used for lawful purposes but are, instead, more well-suited to criminal misuse. Congress relied on similar reasoning in enacting the NFA as the basis for regulating distinct and narrow categories of uniquely dangerous and concealable weapons that it concluded were particularly susceptible to criminal misuse. And both Supreme Court, Sixth Circuit, and other Court of Appeals decisions embrace that logic. *See, e.g., Miller*, 307 U.S. at 178; *Heller*, 554 U.S. at 624, 627 (explaining that short-barreled shotguns are unprotected because they are not "in common use" for "lawful purposes like self-defense" (citation omitted)); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505,

29

517 (1992) (plurality opinion) ("[The NFA's] regulation of short-barreled rifles" targets "a concealable weapon" "likely to be used for criminal purposes."); *Brooks*, 2025 WL 2939404, at *3 (short-barreled shotguns "inflict damage on a scale or in a manner disproportionate to the end of personal protection" or other lawful purposes); *Bridges*, 150 F.4th at 527 (same); *Bianchi v. Brown*, 111 F.4th 438, 451 (4th Cir. 2024) (short-barreled rifles "are more easily concealable than long-barreled rifles but have more destructive power than traditional handguns," giving them the "ability to inflict damage on a scale or in a manner disproportionate to the end of personal protection" or other lawful purposes and "making them particularly desirable to" criminals (citation omitted)), *cert. denied sub nom. Snope v. Brown*, 145 S. Ct. 1534 (2025); *Rush*, 130 F.4th at 637 (short-barreled rifles and shotguns "both are long guns with shortened barrels, which are dangerous because they are more powerful than traditional handguns yet are easier to conceal," "[a]nd both involve a characteristic that makes the firearm especially attractive to criminals while adding little—if any—functionality to the firearm for lawful use"); *Mock*, 75 F.4th at 570 (the NFA's regulation of short-barreled shotguns targets weapons "valued for their ability to be easily concealed and to unleash devastating damage at short range"); *United States v. Serna*, 309 F.3d 859, 863 (5th Cir. 2002) ("In enacting gun control legislation Congress expressed the view that a short-barreled firearm, … when unlawfully possessed, is primarily used for violent purposes."); *Johnson v. United States*, 576 U.S. 591, 640, 642 (2015) (Alito, J., dissenting) (short-barreled shotguns "are not typically possessed for lawful purposes," as they are "notoriously dangerous" and are "uniquely attractive to violent criminals" because they "combine the deadly characteristics of conventional shotguns with the more convenient handling of handguns"); *Friedman v. City of Highland Park*, 136 S. Ct. 447, 449 (2015) (Thomas, J., dissenting from denial of certiorari) ("*Heller* draws a distinction between [firearms commonly used for a lawful purpose] and weapons specially adapted to unlawful uses and not in common use, such as sawed-off shotguns.").

As explained, *see* Defs.' Br. 36, courts have repeatedly rejected Second Amendment challenges

30

to the NFA's regulation of short-barreled rifles and suppressors. While most of these courts have done so on threshold grounds, *see, e.g.*, *id.* 34 n.7, several have held that the NFA is compatible with historical firearms regulations. *See, e.g.*, *Conner*, 2025 WL 2858030, at *5 (short-barreled rifles); *United States v. Lightner*, 2024 WL 2882237, at *3 (M.D. Fla. June 7, 2024) (suppressors); *United States v. Holder*, 2024 WL 1599916, at *7 n.7 (N.D. Ga. Jan. 19, 2024) (short-barreled rifles); *United States v. Serrano*, 651 F. Supp. 3d 1192, 1211–13 (S.D. Cal. 2023) (suppressors), *aff'd*, 2025 WL 3765499 (9th Cir. Dec. 30, 2025); *United States v. Villalobos*, 2023 WL 3044770, at *13 (D. Idaho Apr. 21, 2023) (suppressors); *Beaty*, 2023 WL 9853255, at *8 n.11 (suppressors); *see also Rush*, 130 F.4th at 641–45 (finding that the NFA's regulation of short-barreled rifles is "likely" consistent with the Nation's traditional of firearms regulation after an extensive historical analysis, but resolving the case on threshold grounds). Plaintiffs try to brush off these cases, *see* Pls.' Opp. 37, but conspicuously absent from their briefing is a *single* case adopting their contrary view.

Moreover, plaintiffs' inexplicable criticism that these courts simply "interest-balanced" rather than applied *Bruen*'s historical framework, *id.* at 35, misrepresents their decisions, all of which analyzed historical evidence (that this Court can and should consider) in upholding the NFA's regulations under *Bruen*'s second step. For example, the district court in *Conner* held that the NFA's "registration requirement for short-barreled firearms is consistent with the historical tradition of regulating dangerous and unusual weapons to keep them out of the hands of dangerous criminals," citing, *inter alia*, 17th, 18th, and 19th century laws that "regulated the sale, transportation, testing, *recording*, storage, and manufacture of guns and ammunition" and historical laws that "prohibited riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land," the violation of which could result in "forfeiture of … arms and imprisonment." 2025 WL 2858030, at *5 (cleaned up) (citing Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017) (hereafter "Spitzer"); *Rahimi*, 602 U.S. at 681–82). Similarly, the district court in

31

*Lightner* held that the NFA's regulation of suppressors "is consistent with the nation's historical tradition of firearm regulation" that "substantially controlled the firearms trade," citing, *inter alia*, colonial-era laws that "controlled the areas in which settlers could sell guns" and "required the recording … of arms and munitions," and state laws that "imposed gun registration schemes, a practice that emerged in earnest in the sixteenth and seventeenth centuries." 2024 WL 2882237, at *3 (citing *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017); Spitzer at 59–60, 76). And in *Rush*, the Seventh Circuit looked to numerous "historical regulations on barrel length," "colonial and post-colonial laws akin to modern-day registration and taxation requirements," "laws enacted around the time of founding [that] prescribed fines, taxes, or sureties on gun possession or use for violence prevention purposes," and historical laws "regulating dangerous and unusual weapons," all of which, the court found, had "striking similarities between the[ir] animating principles" and the NFA. 130 F.4th at 641–45. The other courts cited above likewise considered this same or other historical evidence in holding that the NFA comports with historical firearms regulations. *See Serrano*, 651 F. Supp. 3d at 1211–13 (citing historical laws that "were designed to combat illegal arms and ammunition trafficking and to ensure that individuals considered dangerous did not obtain firearms"); *Holder*, 2024 WL 1599916, at *7 n.7 ("Statutes and court decisions from at least the 1800s reflected an ongoing comfort with restrictions against concealed dangerous weapons …."); *Villalobos*, 2023 WL 3044770, at *13 (citing sources from *Heller* for the "'historical tradition of prohibiting the carrying of dangerous and unusual weapons' such as silencers"); *Beaty*, 2023 WL 9853255, at *8 n.11 (relying on "Colonial laws regulating the firearms' trade"). If this Court reaches *Bruen*'s second step, it should too.

## V.    Any relief should be no more burdensome than necessary.

As explained, *see* Defs.' Br. 32–37, plaintiffs' opening brief failed to justify the breadth of their requested injunction, which would cover (i) themselves; (ii) Meridian's customers; and (iii) the associational plaintiffs' members. *See* Pls.' Br. 42. Plaintiffs' opposition lends no further support.

32

*First*, as defendants have already shown, *see* Defs.' Br. 38, Meridian's theory of irreparable harm rests solely on the company's conclusory assertion that it loses business because of the NFA's registration requirement. Rather than dispute this, plaintiffs fault *defendants* for not providing them guidance on how to support their "lost sales" theory. *See* Pls.' Opp. 40. But that's *plaintiffs'* job. The bottom line is, plaintiffs cannot demonstrate irreparable harm based on a declarant's conclusory assertion of financial harm, especially where that assertion appears to have been lifted directly from declarations submitted by other firearms dealers in separate challenges to the NFA. *See* Defs.' Br. 38 & n.10. Thus, plaintiffs have failed to establish Meridian's entitlement to injunctive relief. *See Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (a plaintiff must "substantiate" any claim of irreparable harm with "some evidence"); *accord John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (a plaintiff cannot show imminent, irreparable harm with "unsubstantiated and conclusory assertions"); *Calleja Sebastian v. Olson*, 2025 WL 3688913, at *2 (E.D. Ky. Dec. 19, 2025) (Meredith, J.) ("conclusory assertions … do not satisfy the irreparable-harm inquiry" (citation omitted)); *Second Amend. Found.*, 702 F. Supp. 3d at 538–42 (rejecting commercial plaintiff's claim of irreparable harm that rested on a declarant's conclusory assertions).

Meridian's "lost sales" theory of irreparable harm also fails because it relies on unsubstantiated speculation about how independent third parties will behave in the marketplace. *See* Defs.' Br. 39–40. This case is thus unlike *Department of Commerce v. New York*, 588 U.S. 752 (2019), *contra* Pls.' Opp. 40–41, where the Supreme Court found that the plaintiffs' standing theory did "not rest on mere speculation about the decisions of third parties" but instead rested on actual evidence of how third parties were likely to act. *Dep't of Com.*, 588 U.S. at 768. Plaintiffs here have offered *no* non-conclusory, non-speculative evidence in support of their theory that a flood of individuals will purchase Meridian's

33

NFA firearms if, and only if, this Court enjoins the enforcement of the challenged NFA regulations.[17]

*Second*, defendants have already explained why, if the Court is inclined to grant relief, it should limit any injunction only to the plaintiffs and *identified* members of the associational plaintiffs. *See* Defs.' Br. 40–41. While plaintiffs do not dispute that so limiting an injunction would make practical sense, they suggest that doing so would "disregard[] binding precedent." *See* Pls.' Opp. 45. But plaintiffs cite no case that *requires* that this Court extend injunctive relief to an associational plaintiff's entire membership, much less to anybody who becomes a member at any point "in the future." *See* ECF No. 17-1. And indeed, as the Supreme Court in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), made clear, this Court has discretion in fashioning an equitable remedy that fits "the necessities of the particular case" and comports with equitable principles, even if that means granting something less than "complete relief." *Id.* at 853–54 (citation omitted); *see also id.* at 863–64 (Thomas, J., concurring, joined by Gorusch, J.) ("[T]o say that a court *can* award complete relief is not to say that it *should* do so…. [A court] must ensure that any injunctions comport with … other principles of equity," including "weigh[ing] considerations such as equity's concern with justice also for the defendant." (cleaned up)).

*Third*, while plaintiffs' briefing does not acknowledge this request, plaintiffs' proposed order asks the Court extend injunctive relief to the customers *of* the members *of* the associational plaintiffs. *See* ECF No. 17-1. But plaintiffs cite no case—and defendants are aware of none—permitting an organization to seek and obtain relief on behalf of its members' customers or any other individual so far removed from the Court's jurisdiction. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977) ("Even in the absence of injury to itself, an association may," under certain circumstances, "have standing solely as the representative of its *members*." (emphasis added)). Moreover, it's unclear

---

[17] Plaintiffs misstate defendants' argument as asserting that no "indirect" harms can support the issuance of an injunction. *See* Pls.' Opp. 42. The problem with plaintiffs' theory is not that it relies on indirect harms, but rather that all they have offered in support of their theory are conclusory and speculation assertions, which cannot establish irreparable harm, whether direct or indirect.

under what circumstances these "customers" would be protected under plaintiffs' requested injunction—*e.g.*, only for an NFA firearm purchased from an associational plaintiffs' member or for *all* NFA firearms they possess, transfer, sell, make, and manufacture? Granting such an ill-defined injunction would thus, at a minimum, run afoul of Federal Rule of Civil Procedure 65(d)'s specificity requirement. *See James B. Oswald Co. v. Neate*, 98 F.4th 666, 677 (6th Cir. 2024) (Rule 65(d) requires that an injunction state with "reasonable detail" "exactly what conduct is proscribed" (citations omitted)); *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 363–64 (6th Cir. 2022) (an injunction violates Rule 65(d) where parties are "left to guess" about its scope (citation omitted)).

## CONCLUSION

The Court should grant summary judgment in defendants' favor on all of plaintiffs' claims.

Dated: July 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On July 22, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Kentucky, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice