## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

| | | |
|---|---|---|
| T.J. ROBERTS; ZACHARY COCKRELL; MERIDIAN ORDNANCE LLC; BUCKEYE FIREARMS ASSOCIATION, INC.; CENTER FOR HUMAN LIBERTY; JEWS FOR THE PRESERVATION OF FIREARMS OWNERSHIP; and AMERICAN SUPPRESSOR ASSOCIATION FOUNDATION, INC., | : : : : : : : : | |
| *Plaintiffs*, | : : | No. 2:26-cv-00091-SCM |
| v. | : : : | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; ROBERT CEKADA, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and TODD W. BLANCHE, in his official capacity as Acting Attorney General of the United States, | : : : : : : : : | |
| *Defendants.* | : : | |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITIES</u>

Plaintiffs respectfully submit this Notice of Supplemental Authorities to alert the Court to three recent Supreme Court decisions that bear on the issues in this case: *United States v. Hemani*, 608 U.S. ----, 146 S. Ct. 1677 (2026) (attached as Exhibit A); *Landor v. Louisiana Department of Corrections & Public Safety*, No. 23-1197, 2026 WL 1791277 (U.S. June 23, 2026) (attached as Exhibit B); and *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026) (attached as Exhibit C).

*Landor* supports Plaintiffs' argument that Congress's taxing power, supplemented by the Necessary and Proper Clause, cannot be stretched to support the challenged National Firearms Act

("NFA") provisions. Mot. for Summ. J. Br. at 12–17, ECF No. 18 (Apr. 24, 2026) ("MSJ Br.");

Pls.' Combined Reply & Opp'n to Defs.' Mot. for Summ. J. at 5–14, ECF No. 39 (June 24, 2026)

("Opp'n to Gov't MSJ"). The relevant question is whether the NFA's registration scheme is a

necessary and proper means of carrying into execution the exercise of the tax power via the special

occupational tax for dealers and manufacturers, and *Landor* indicates that the answer is "no." Just

as allowing money damages suits against non-consenting officials would not be incidental to the

spending power but rather would represent a dramatic expansion of congressional power, *Landor*,

2026 WL 1791277, at *9–11, so too would imposing a burdensome registration scheme on non-

taxpayers to support the special occupational tax mark a dramatic expansion of congressional

power and in principle allow Congress to regulate in minute detail the activities of untaxed

Americans.

Wolford* and *Hemani* support Plaintiffs' arguments that the NFA's regulation of suppressors

and short-barreled rifles violate the Second Amendment.

First, *Wolford* confirms that the NFA's regulation of suppressors and short-barreled rifles

implicates the Second Amendment. As an initial matter, *Wolford* explained that in conducting

*Bruen*'s initial, plain-text inquiry, the only predicate question with respect to the term "Arms" is

does the law at issue "concern any form of 'Arms,' *i.e.*, any weapon customarily used for offensive

or defensive purposes"? *Wolford*, 2026 WL 1825723, at *6. The answer to that question for

suppressors and short-barreled rifles is beyond dispute. A suppressed firearm is a "form" of an

arm, and the NFA's regulation of suppressors plainly "concern[s]" the use of firearms. And a short-

barreled rifle is indisputably a "form" of an arm as well. Consequently, the Second Amendment

presumptively protects conduct involving suppressors and short-barreled rifles and the onus is on

the Government to prove that they are "dangerous and unusual" or that its registration scheme otherwise comports with the Second Amendment. MSJ Br. at 27–42.

Furthermore, the Court also framed the plain-text inquiry broadly with respect to "keep" and "bear." The relevant question is "does the law place *any restrictions* on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms." *Wolford*, 2026 WL 1825723, at \*6 (emphasis added). Or as Justice Jackson explained in dissent, the "majority essentially directs courts to start by simply asking whether a gun owner cannot do what she wants with her firearm." *Id.* at \*23 (Jackson, J., dissenting). As relevant here, predicating the possession of arms on registration plainly restricts both their keeping and bearing. Indeed, it is similar in structure to *Wolford*, which placed a condition precedent (express proprietor approval) on the arms-bearing conduct at issue in that case. This framing is consistent with Plaintiffs' argument that the proper question is whether the possession, making, or transfer of a suppressed firearm or a short-barreled rifle places *any restriction* on arms-bearing conduct. MSJ Br. at 26–27. It does, so the NFA's regulation of suppressors and short-barreled rifles implicates the Second Amendment.

Second, *Wolford* makes clear that the "in common use" analysis to determine whether an Arm is "dangerous and unusual" is "out of place at *Bruen*'s first step. At that stage, as we have explained, the question is simply whether a challenged law falls within the Second Amendment's 'plain text.'" *Wolford*, 2026 WL 1825723, at \*10 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022)). The contrary position effectively poses the question to this Court of whether parties "can smuggle additional limits, drawn from our regulatory tradition, into the plain-text stage of the inquiry," but "[t]he answer is and always has been no." *Id.* at \*14 n.1 (Barrett, J., concurring). As Justice Jackson made plain in her dissent, applying *Wolford* requires that "at step

3

one, courts must look *only* to the 'plain text' of the Second Amendment." *Id.* at *26 (Jackson, J., dissenting).

Third, *Wolford* also supports Plaintiffs' argument that there is no carveout from the *Bruen* inquiry for shall-issue licensing laws. *See* Opp'n to Gov't MSJ at 36–39. In explaining the requisite Second Amendment historical analysis that *Bruen* reaffirmed, *Wolford* made clear that it involves just "two steps": the plain-text inquiry and the historical inquiry. *Wolford*, 2026 WL 1825723, at *6, *10. If a challenged law falls within the plain text of the Second Amendment at step one, it is "presumptively unconstitutional," and the burden shifts to the government to show that "its challenged law did not infringe the historical understanding of the codified right." *Id.* at *6. *Wolford* leaves no room for a carveout from the *Bruen* inquiry for shall-issue licensing laws. *Wolford*, therefore, abrogates decisions that could be read to have concluded otherwise. *See, e.g.*, *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025); *United States v. Speed*, 175 F.4th 272 (4th Cir. 2025); *United States v. DeBorba*, 177 F.4th 1005 (9th Cir. 2026).

Fourth, *Wolford* and *Hemani* support the argument that licensing and registration are distinct concepts that cannot be conflated. In both decisions, the Supreme Court carefully analyzed the "how" and the "why" of the proposed historical analogues that the government proffered. *Wolford*, 2026 WL 1825723, at *6, *10–14; *Hemani*, 146 S. Ct. at 1686–94. The "how" and the "why" of licensing and registration are different. Licensing is focused on ensuring that the person licensed is not disqualified from possessing arms, and it is typically a one-time process subject to renewal after a specified period. Registration, by contrast, focuses on tracking firearms and who owns them. These are distinct regulatory regimes, and even if the Second Amendment allows the former, that does not mean it allows the latter. *See Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); Opp'n to Gov't MSJ at 36–39.

Dated: July 14, 2026                    Respectfully Submitted,

/s/ David H. Thompson
David H. Thompson*
Peter A. Patterson*
Nicholas A. Varone*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
nvarone@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*